IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-30494
_____

BILLY R. VINING, TRUSTEE; JANET OCHS NORRIS;
JAMES ALLAN NORRIS, JR.; TOMMYE CONNER NORRIS;
and JOHN GRAHAM NORRIS, JR., M.D.,

Appellees,

versus

JOHNSON & PLACKE; DON H. JOHNSON;
ALLAN L. PLACKE,

Appellants.

--------------------
Appeal from the United States District Court
for the Western District of Louisiana
(96-CV-312)
--------------------

November 26, 1999

Before POLITZ, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

This appeal arises from a bizarre and acrimonious fact situation with which the parties hereto are all too familiar and from which considerable litigation, both criminal and civil, evolved. The instant appeal involves one aspect of bankruptcy proceedings emanating from the real-life soap opera that provides the historical background of this case. Specifically, Appellants consist of a Monroe, Louisiana law firm and its two current partners (collectively "Appellants") who are judgment creditors of

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Appellee James Allan Norris, Jr., attorney at law ("Debtor"), the debtor in the subject bankruptcy, who is also the non-discharged judgment debtor and former partner of Appellants. Appellees Tommye Conner Norris and John Graham Norris, Jr., M.D. (collectively "First Mortgagees") are, respectively, the now-deceased mother and the cousin of the Debtor, to whom they loaned money and from whom they accepted as collateral special mortgages on property of the Debtor. The First Mortgagees' special mortgages were obtained and duly recorded before Appellants obtained and recorded their money judgment against the Debtor and before they put Debtor into involuntary bankruptcy.

Appellants have contended all along that the First Mortgagees colluded with the Debtor to put his assets beyond the reach of his creditors by participating with him in the mortgage transactions referred to above, insisting that the mortgages and the first liens they create on the property of the Debtor should be disallowed for purposes of his bankruptcy, the result of which would be to make Appellants' judicial mortgages first in rank among encumbrances on the properties of the Debtor that he mortgaged to the First Mortgagees.

Specifically, the instant appeal arises from an adversary proceeding that was instigated by Appellee Billy R. Vining, Trustee (the "Trustee") in the bankruptcy court for the Western District of Louisiana against the First Mortgagees. The Trustee sought to have the mortgages on the property of the Debtor voided as collusive. The adversary proceeding was removed from the bankruptcy court to

2

the district court when, because of a jury trial request, the reference was withdrawn.

The district court conducted a full-blown, two-day jury trial which the district court terminated and dismissed, after the case had gone to the jury, on joint motion of the Trustee and the First Mortgagees who reached a settlement and compromise of the issues before the court: Perceiving the likelihood that the jury would find the First Mortgagees credible and hold in their favor, the Trustee advocated and the First Mortgagees accepted a settlement proposal that would recognize the validity of the mortgages and cause title to the mortgaged properties to be conveyed by the Trustee to the First Mortgagees — free and clear of all junior encumbrances — in satisfaction of their secured claims, in consideration of payment of $205,000 by the First Mortgagees to the Trustee for the benefit of the bankruptcy estate of Debtor and the waiver of some $40,000 in fees and commissions by the Trustee, which would be paid to Appellants. The court was prepared to approve the settlement and compromise and authorize the sale but Appellants objected. Before approving the settlement and authorizing the sale, therefore, the district court conducted a hearing on October 1, 1998, at which Appellants were ordered to file their expert reports on the valuation of the subject properties by or before November 13, 1998. The expert reports were in fact submitted on December 11, 1998 and, according to the district court, were given full consideration along with all other evidence and pleadings. Concluding that, notwithstanding the

3

opposition and expert evidence submitted by Appellants, the proposed amicable disposition was fair and reasonable, the court approved the compromise and settlement and authorized the sale on the terms and conditions set forth in the settlement agreement. Even though a result of the compromise and sale was to produce an additional $205,000 for the estate of the Debtor, Appellants remained dissatisfied, primarily because the subject properties would be conveyed to the First Mortgagees free and clear of Appellants' judicial mortgage that resulted from the filing and recording of their judgment against the Debtor. This would eliminate the security of the Appellants in those properties. They therefore sought a new trial, which the district court denied. This appeal ensued.

The sole claim of reversible error advanced to this court by Appellants is the purported failure of the district court to comply with 11 U.S.C. § 363 before approving the sale of the subject property free and clear of Appellants' judicial mortgage. In particular, Appellants contend that the district court violated 11 U.S.C. § 363(f) by authorizing the sale of the property under § 363(b) or (c) free and clear of Appellants' encumbrance without conducting a hearing to determine if one or more of subsections (1) through (5) of § 363(f) applied.

After reviewing the record on appeal, and the facts and the applicable law, and considering the arguments of the parties as set forth in their respective appellate briefs, we are satisfied that the district court committed no reversible error. Following the

4

filing of Appellants' opposition, the district court conducted a hearing on October 1, 1998. Appellants requested and received a continuance for the purpose of obtaining and submitting property appraisals. After Appellants obtained and filed the expert reports and appraisals, the court on November 20, 1998 held a status conference. Only after conducting that conference and receiving all pleadings and other filings of the parties did the court grant the requested authority to settle the claims being litigated and allow the Trustee to sell the properties free and clear of all inferior encumbrances. Again, from the record and from the court's Memorandum Ruling and Order on April 9, 1999, it is clear that, in letter and in spirit, the district court complied with 11 U.S.C. § 363(f). It is equally clear that the court seriously considered all facts, including expert reports, and all legal arguments of the parties, after which it concluded, "[e]ven accepting [Appellants'] evaluation of the assets...the compromise was fair and equitable." The court even expressed that the series of hearings and considerations it had conducted constituted compliance with 11 U.S.C. § 363 — and we agree. The court committed no legal error; its findings of fact were not clearly erroneous; and it did not abuse its discretion in concluding that the compromise as a whole and the particular aspect of that compromise that provides for the sale of the encumbered properties free and clear of Appellants' judicial mortgage is fair and equitable and in the best interest of the estate and its creditors. The rulings of the district court, therefore, are affirmed in all respects.

AFFIRMED.